OPINION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Fulton County Court of Common Pleas which granted defendant-appellee Jayco, Inc.'s summary judgment motion, denied plaintiff-appellant Mary Lou Miner's summary judgment motion and thereby dismissed the action. From that judgment appellant now raises the following assignments of error:
 "I. IT WAS ERROR FOR THE TRIAL COURT TO DENY PLAINTIFF-APPELLANT'S MOTION FOR SUMMARY JUDGMENT.
 "II. IT WAS ERROR FOR THE TRIAL COURT TO GRANT DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT.
 "III. IT WAS ERROR FOR THE TRIAL COURT TO CONCLUDE THAT ITS RULINGS ON THE CROSS-MOTIONS FOR SUMMARY JUDGMENT CONSTITUTED `A COMPLETE ADJUDICATION OF ALL INCIPIENT ISSUES.'"
The facts of this case are as follows. Jayco is a manufacturer of recreational vehicles and trailers with a manufacturing facility located in Middlebury, Indiana. On May 11, 1993, appellant and her husband, Dale F. Miner[1], purchased a Jayco 1993 Designer Series Fifth Wheel trailer from Town Country R.V. Center, Inc., a Jayco dealer in Clyde, Ohio. Included in the purchase was a limited warranty issued by Jayco which warranted for one year from the date of purchase that all parts of Jayco's manufacture would be free from substantial defects in material and workmanship. The warranty then provided that any part manufactured by Jayco and determined to be defective in material or workmanship during the warranty period would be repaired free of charge. After the Miners took possession of the trailer in May 1993, they began experiencing problems. Between May 11, 1993 and May 4, 1994, the trailer required repairs by either a dealer or by Jayco approximately fifteen times.
Sometime in 1994, it became apparent that certain repairs would have to be done at Jayco's factory in Middlebury, Indiana. The warranty work would be done at no charge to the Miners but they would have to deliver the trailer to Middlebury, Indiana at their expense. The main problem to be fixed at Jayco's factory was the repair of an electrically operated room slide-out unit which sagged causing wear and stain on the wall-to-wall carpet. In May 1994, the Miners took the trailer to Jayco's factory to have the warranty work done. Sometime thereafter, the Miners were notified that the repairs were completed and they could pick up the trailer. On May 26, the Miners returned to Middlebury, Indiana to pick up the trailer. Before leaving, the Miners tested the electric slide-out unit to insure that it was repaired and operating properly. The slide-out unit, however, had not been repaired and was still not operating properly.
Upon being advised of this, Jayco informed the Miners that it could not fix the trailer at that time, but promised that if the Miners would bring the trailer back to the factory in September 1994, Jayco would replace the sagging slide-out floor and would replace the carpet throughout the trailer. The Miners insisted that Jayco put these promises in writing. Accordingly, on May 26, 1994, David Coyne, Jayco's Owner Relations Coordinator, issued a letter to the Miners which reads in relevant part as follows:
 "This letter is to confirm our discussion today regarding warranty repairs to your 1993 Designer Series fifth wheel trailer.
 "We will cover the following repairs at no charge to you in our factory repair facilities in September, 1994:
"1. Replace carpet throughout the coach.
"* * *
"4. Replace sagging slide-out floor.
"* * *
 "Please let us know if any other repairs will be needed, or if we can be of service in any way."
On September 6, 1994, the Miners returned to Jayco's Middlebury, Indiana factory for the purpose of having the warranty repairs made. On September 14, 1994, Jayco contacted the Miners to inform them that their trailer was ready. In addition, Jayco sent a letter to the Miners stating that it was extending "for one year, warranty coverage on your 1993 Designer Fifth Wheel, related to any repairs performed on your unit on September 14, 1994." However, when the Miners returned to Indiana, they discovered that the work had not been performed as promised. Rather than replacing the carpet throughout the trailer, Jayco had replaced the damaged carpet with identical carpet. In addition, rather than replacing the entire slide out unit, Jayco added angle irons to the front of the slide-out unit to correct the sagging problem. The Miners were not satisfied. Subsequently, the Miners and their attorney attempted to obtain the promised repairs but to no avail.
On October 30, 1995, the Miners filed a complaint against Jayco. In their first claim for relief, the Miners alleged that Jayco's use of pieced out carpeting to match the existing carpet was inconsistent with Jayco's letter of May 26, 1994. They further alleged that Jayco failed to replace the sagging floor which had and continues to have a direct effect on the slide out operation of the unit. The Miners then asserted that, despite their requests, Jayco had refused to correct the defects in the carpeting and slide-out unit and that such refusal amounted to a breach of the limited warranty that came with the trailer and a breach of the letter agreement of May 26, 1994. As a result of these breaches, the Miners asserted damages of $25,000 and demanded a judgment for that amount. In their second claim for relief, the Miners asserted violations of the Consumer Sales Practices Act ("CSPA"), R.C. Chapter 1345. Specifically, they asserted that Jayco represented that a warranty applied to a consumer transaction, in addition to other rights, remedies or obligations and that those representations were false in violation of R.C. 1345.02(B)(10); that Jayco, as a supplier, knowingly made a material representation as to a necessary repair to be undertaken pursuant to warranty and failed to attempt the repair in violation of R.C. 1345.03(B)(7); and that Jayco has engaged in a continual pattern of stalling and incompetent behavior, resulting in the evading of its contractual obligations to the Miners, in violation of R.C. 1345.03(A). As a result of these violations, the Miners asserted that they were entitled to three times their actual damages or $200 per violation, whichever is greater, plus attorney fees and costs. Finally, in their third claim for relief, the Miners asserted that as a result of the breaches of contract alleged in the first claim for relief and the CSPA violations alleged in the second claim for relief, they were alternatively entitled to rescind the contract entered into on May 11, 1993 by virtue of Ohio common law and R.C. 1345.09(B).
On July 16, 1998, Mary Lou Miner filed a motion for summary judgment in the court below. Miner argued that Jayco's written promise of May 26, 1994, was an illusory guarantee which violated R.C. 1345.02(B)(10). Miner also argued that Jayco's failure to honor an express warranty was in violation of R.C.1345.02(A) and (B)(10) as set forth in Brown v. Lyons (1974),43 Ohio Misc. 14 and that Jayco's continual stalling and evasion of its legal obligations was in violation of R.C. 1345.03(A), as further established in Brown v. Lyons, supra. Miner supported her motion with copies of the sales agreement, the limited warranty and the letter of May 26, 1994, as well as her own affidavit attesting to the facts as set forth above. She further stated in her affidavit that there had been no substantial change in the trailer since she and her husband had purchased it. Miner also supported her motion with the affidavit of her attorney, Jim Miller, who attested to the fact that the case of Brown v. Lyons,supra, is in the public inspection file maintained by the Ohio Attorney General pursuant to R.C. 1345.05(A)(3).
Jayco responded with a memorandum in opposition and cross-motion for summary judgment supported by the affidavits of several Jayco employees and the deposition testimony of Dale Miner. David Coyne, Jayco's Owner Relations Coordinator and the author of the May 26, 1994 letter, stated that in agreeing to replace the sagging floor, Jayco was relying on the Miners' statements regarding the unit and had only conducted a cursory inspection of the unit before agreeing to replace the floor. Coyne further stated that at the time the letter was issued, Jayco agreed to replace the carpet throughout the unit because it was under the mistaken belief that the carpet in the trailer was no longer available and could not be matched. In September 1994, Jayco determined that the identical carpet was available and so Jayco only replaced the carpet where it was damaged. Coyne attested to the fact that the Miners received the exact same carpet they had originally purchased with the trailer. Dennis Sarno, an employee of Jayco who inspected the trailer in September 1994 stated that it was within his field of expertise to determine whether the slide-out units on the fifth wheel trailers are functioning properly. In September 1994, Sarno conducted a thorough inspection of the Miners' trailer and determined that the unit only needed minor adjustments, including additional bracing in the front of the unit. A sixteen foot section of angle iron was then added to the front of the slide-out unit which, Sarno asserted, corrected the sagging problem. Sarno further asserted that the unit required no additional repairs of any nature and that replacing the deck would not have fixed the sagging problem. Finally, Sarno stated that following the completion of the repairs, the unit functioned properly.
Russ Draper, Jayco's Warranty Manager, stated in his affidavit that sometime after the September 1994 repairs, he traveled to Fulton County, Ohio to inspect the Miners' trailer. Draper asserted that at that time, the slide-out unit was functioning properly as designed. He further stated that the carpet in the trailer was the same as that installed in the rest of the trailer and that there were no defects apparent on the carpet.
Dave Dormer, a Jayco technician, also inspected the trailer with Russ Draper sometime after the September 1994 repairs. Dormer stated that, based on his training, education and experience, the slide-out unit was functioning properly and as designed when he inspected it.
In addition to the affidavits, Jayco submitted the deposition testimony of Dale Miner in support of its summary judgment motion. In pertinent part, Miner testified that it was his understanding that Jayco was to replace the carpet throughout the trailer because Jayco no longer had the existing color available and the Miners did not want two different colored carpets in the trailer. Miner further testified, however, that as of the date of his deposition, June 24, 1997, the slide-out unit was still not working properly. Upon questioning by Jayco's attorney, Miner stated:
 "Q. And can you tell me what problems still exist with the unit at this time?
 "A. The new carpeting is frayed and there's big black mark on the carpeting, still got problems with the slide-out unit.
 "Q. Problems in terms of the unit digging into the carpeting?
"A. The carpeting's frayed, yes, sir."
On December 17, 1998, the lower court issued a decision and judgment entry granting Jayco's motion for summary judgment and denying Miner's motion for summary judgment. Initially, the court held that, because Miner did not deal with the breach of warranty issue in her motion, she had conceded that Jayco was not in breach of warranty. Based on this, the court expressly held that Jayco did not breach any warranty to appellant. With regard to the CSPA claims, the court determined that Jayco had made all necessary warranty repairs and, therefore, had not committed any violations of the CSPA. The court then concluded that its ruling was a complete adjudication of all the issues in the case and granted final judgment to Jayco. It is from this judgment that Mary Lou Miner now appeals.
Appellant's first and second assignments of error are interrelated and will therefore be addressed together. Appellant asserts that the trial court erred in granting Jayco's motion for summary judgment and in denying her motion for summary judgment.
In reviewing the ruling on a motion for summary judgment, this court must apply the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127,129. Summary judgment will be granted when there remains no genuine issue as to any material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
Initially the parties argue, and we must determine, whether the CSPA applies to the transactions that brought the parties together. Appellee contends that the act does not apply because there was no "consumer transaction" between the parties as that term is used in the act.
R.C. 1345.02(A) provides that: "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." Similarly, R.C. 1345.03(A) reads: "No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." A "consumer transaction" is defined by R.C. 1345.01(A) as "* * * a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." Accordingly, to come within the realm of the CSPA, the consumer transaction must be between a "supplier" and an individual for purposes that are primarily personal, family or household. A "supplier" is defined by R.C. 1345.01(C) as a "seller, lessor, assigner, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not he deals directly with the consumer."
Jayco argues that the CSPA does not apply to this case because Jayco did not sell anything to appellant and appellant did not rely on any representations of Jayco in deciding whether or not to purchase the trailer. Jayco further argues that it did not and would not receive anything of value as a result of its actions with respect to the letter of May 26, 1994.
As this court stated in Mermer v. Med. CorrespondenceServ. (1996), 115 Ohio App.3d 717, 721: "The OCSPA was enacted by the General Assembly to provide relief to `individuals' against [unconscionable,] unfair or deceptive acts or practices in connection with consumer transactions and, as such, is to be liberally construed." However, intent or knowledge that the act complained of is unfair, deceptive or unconscionable is not an element of a CSPA claim. Fletcher v. Don Foss of Cleveland, Inc.
(1993), 90 Ohio App.3d 82, 86. In Garner v. Borcherding Buick,Inc. (1992), 84 Ohio App.3d 61, 64, the court addressed the issue of privity of contract as it relates to consumer transactions and determined:
 "A review of the Ohio Consumer Sales Practices Act reveals that nothing in the statute provides that privity of contract is a prerequisite to the recovery of damages. Rather, the definition of `supplier' under the Ohio Consumer Sales Practices Act includes those who engage in the business of effecting consumer transactions, whether or not they deal directly with the consumer. R.C. 1345.01(C). Furthermore, a supplier's representations may violate the Ohio Consumer Sales Practices Act whether they occur `before, during, or after the transaction.' R.C. 1345.02(A)." (Emphasis added.)
In the present case, Jayco was the manufacturer of the trailer at issue and as such was engaged in the business of effecting a consumer transaction, i.e. the sale of that trailer. As a result of the sale of that trailer through its agent, Jayco received some consideration. In addition, by providing the warranty as part of the consumer transaction at issue, and by providing and performing the warranty work, Jayco provided a service which came within the CSPA. Accordingly, the CSPA applies to both the sale of the trailer and the provision of warranty work.
Having found that the CSPA does apply to this case, we must now determine if appellant presented any evidence in the court below that Jayco violated the act. Initially, appellant alleged that Jayco violated R.C. 1345.02(B)(10) by failing to honor the terms of its warranty as expressed in the letter of May 26, 1994. R.C. 1345.02(B)(10) reads:
 "(B) Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive:
"* * *
 "(10) That a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false."
Moreover, a consumer has a cause of action under the CSPA and is entitled to relief:
 "Where the violation was an act or practice * * * determined by a court of this state to violate section 1345.02 or 1345.03 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code * * *." R.C. 1345.09(B).
In Brown v. Lyons, supra, at 19, the court held that "Failure by a supplier in connection with a consumer transaction to honor express warranties, constitutes deceptive acts and practices in violation of * * * R.C. 1345.02(A). This failure also constitutes a violation of R.C. 1345.02(B)(10)." See, also, Layne v. McGowen
(May 24, 1995), Montgomery App. No. 14676, unreported; Carr v.Hashman (July 28, 1988), Franklin App. No. 88AP-165, unreported. In the proceedings below, appellant's counsel's affidavit established that Brown v. Lyons has been made available for public inspection pursuant to R.C. 1345.05(A)(3). Appellant alleges that by failing to replace the carpet throughout the trailer and by failing to replace the sagging slide-out floor, Jayco failed to honor its express warranties and therefore violated R.C.1345.02(B)(10).
Jayco admits, and it is undisputed, that it did not replace the entire carpet throughout the trailer. Jayco asserts, however, that its promise to replace all of the carpet was based on the mistaken belief that the original carpet installed in the trailer was no longer available and therefore could not be pieced in. In his deposition, Dale Miner agreed that this was the reason behind Jayco's promise to replace all of the carpet. He further stated that he wanted all of the carpet replaced because he wanted the carpet to match and did not want two different color carpets in the trailer. Upon review of the undisputed evidence, we fail to see how Miner was damaged by Jayco's failure to replace all of the carpet in the trailer. Although Jayco's failure to replace all of the carpet may have been a literal failure to abide by the warranty agreement, the carpet that they pieced in to replace the damaged carpet was the exact same carpet that was being replaced. Accordingly, the trial court did not err in granting Jayco summary judgment with regard to appellant's claim based on the failure to replace the carpet.
Appellant further contends, however, that Jayco violated R.C. 1345.02(B)(10) by failing to replace the sagging slide-out floor. In the proceedings below, evidence was presented by way of Mary Lou Miner's affidavit and Dale Miner's deposition, that the slide-out unit still did not function properly and was still causing fraying and marking of the carpet. Jayco presented evidence that the unit had been properly fixed. The trial court reviewed this evidence and concluded that "Plaintiffs have not been able to identify any specific problem with the slide-out unit at the present time. Further, Plaintiffs have provided no expert opinion indicating the slide-out unit is currently in need of repair, or that it does not function properly, or that it is otherwise damaged." In our view, the problems with the trailer of which appellant complained, are not the type which require expert testimony. Surely, the owner of a trailer like the one involved in this action can determine that, due to the marking and fraying of the carpet, the slide-out unit is not functioning properly. Because appellant gave Jayco several opportunities to fix the problem and because she and her husband testified that the problem has never been fixed, appellant has raised a genuine issue of material fact regarding whether Jayco violated the CSPA by failing to abide by its warranty.
Accordingly, the trial court erred in granting Jayco summary judgment on that claim. The second assignment of error is well-taken in part, and the first assignment of error is not well-taken.
In her third assignment of error, appellant claims that the trial court erred in concluding that its rulings on the cross-motions for summary judgment constituted a "complete adjudication of all incipient issues." We agree.
In her motion for summary judgment, appellant asserted that she was moving for full or partial summary judgment. She then addressed her claims under the CSPA, specifically, violations of R.C. 1345.02(B)(10) and 1345.03(A). We have addressed the R.C.1345.02(B)(10) claim above. R.C. 1345.03(A) prohibits unconscionable acts and practices. In Brown v. Lyons, supra, at 21, the court held that "A supplier in connection with a consumer transaction who consistently maintains a pattern of inefficiency, incompetency, or continually stalls and evades his legal obligations to consumers, commits an unconscionable act and practice in violation of * * * R.C. 1345.03(A)[.]" See, also,Sproles v. Simpson Fence Co. (1994), 99 Ohio App.3d 72; Couto v.Gibson, Inc. (Feb. 26, 1992), Athens App. No. 1475, unreported;Pearson v. Tom Harrigan Oldsmobile-Nissan, Inc. (Sept. 16, 1991), Montgomery App. No. 12411, unreported. Appellant submitted evidence that she and her husband had first taken the trailer to Jayco's Indiana factory in May 1994 to have the sagging slide-out unit fixed. Upon being notified that the unit was fixed, the Miners returned to the Indiana factory to pick up the trailer. Before leaving, they tested the slide-out unit and discovered it had not been fixed. At this point, Jayco's employee authored the May 1994 letter, acknowledging that the slide-out unit needed to be replaced and acknowledging that such replacement was covered under the warranty. The Miners then returned in September 1994 to have the warranty work performed. Subsequently, they returned to the factory to pick up the trailer and discovered that the slide-out unit had not been replaced but, rather, had been bolstered by angle irons. The Miners asserted in their affidavit and deposition that the slide-out unit still does not function properly. Mary Lou Miner's affidavit reveals that in June 1995, they followed up with Jayco one more time and got no satisfaction. She further states that they then tried to get help through Jayco's dealer, Town Country R.V. Center, Inc., but to no avail. Finally, the Miners consulted with an attorney who wrote a letter to Jayco asking that it make the repairs. Jayco responded with a letter dated July 24, 1995, stating that replacing the slide-out floor was not needed and that the repairs that were made fixed the sagging problem.
Based on this evidence, appellant argued in her summary judgment motion that she had presented a claim under R.C.1345.03(A). The trial court never specifically addressed this claim but, rather, held that Jayco did not violate the CSPA. In our view, a genuine issue of material fact remains in that there exists conflicting evidence regarding whether the sagging problem was remedied and, therefore, whether Jayco evaded its legal responsibility to the Miners.
Finally, in her first claim for relief, appellant had asserted a claim for breach of warranty. In its decision, the lower court held that "Plaintiffs do not deal with the warranty issue in any way in their Motion and Memorandum. Plaintiffs have in essence conceded Defendant is not in breach of warranty, and the Court will hereby so find and so rule." This is simply not supported by the record. Throughout her entire summary judgment motion, appellant asserted that Jayco had breached its warranty by failing to properly repair the trailer, and supported that assertion with evidence. She, therefore, cannot be viewed as having conceded the issue. Although appellant did not specifically address a claim for breach of warranty, which is covered by R.C. Chapter 1302., in her summary judgment motion, neither did Jayco in its memorandum in opposition and motion for summary judgment. Accordingly, for the trial court to grant Jayco summary judgment on this claim was improper.
The third assignment of error is, therefore, well-taken.
On consideration whereof, the court finds that substantial justice has not been done the party complaining and the judgment of the Fulton County Court of Common Pleas is reversed in part and affirmed in part. This cause is remanded for further proceedings consistent with this decision. Court costs of this appeal are assessed to appellee.
JUDGMENT REVERSED IN PART AND AFFIRMED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J.
 _______________________________ JUDGE
 Richard W. Knepper, J.
_______________________________
Mark L. Pietrykowski, J.
JUDGE
CONCUR.
 _______________________________ JUDGE
[1] Dale F. Miner, an original plaintiff in this matter, died during the proceedings below on December 30, 1997 and, therefore, is not a party to this appeal.