OPINION
{¶ 1} Plaintiff-Appellant Marcia Bodenberg is appealing a decision of the Montgomery County Court of Common Pleas affirming a magistrate's decision and failing to award Bodenberg treble damages stemming from a Consumer Sales Practices Act ("Act") claim pursuant to R.C. 1345.09(B).
 {¶ 2} Bodenberg entered into a home construction contract with Defendant-Appellee Duggan Homes, Inc. Duggan Homes agreed to construct a residential premises for Bodenberg on lot 3 of the Stoney Creek subdivision in Huber Heights, Ohio, for the sum of $170,540. Construction began on the residence in April of 2000.
 {¶ 3} In July of 2000, the builders noted that the concrete slab on the first floor was not level. In an attempt to provide a level substraight for the first floor, Duggan Homes' subcontractor, Christys Construction, "skim coated" the flooring approximately six times. The parties closed in September of 2000, whereby Bodenberg paid the purchase price for the residence, and Duggan Homes transferred possession of the residence to Bodenberg. As a registered builder, Duggan Homes was required to provide Bodenberg with a limited warranty and was bound by it. Duggan Homes warranted that for a period of one year, the home would be free from defects in materials and workmanship due to noncompliance with the performance standards set forth in a book promulgated by the register builder's program of the Home Builders Association of Dayton and the Miami Valley.
 {¶ 4} Several days after Bodenberg took occupation of the residence, she noticed gravel arising from under the vinyl floor in the kitchen. Bodenberg called and reported the problem to Duggan Homes. Duggan Homes failed to respond; Bodenberg dropped the issue at that time.
 {¶ 5} In early March of 2001, Bodenberg's father, who also lived in the residence, contacted Duggan Homes about the kitchen floor. When Duggan Homes did not respond, Bodenberg's father again called to report the problem. As a result, Rich Duggan, president of Duggan Homes, toured the home. Bodenberg complained that the floor was not level and she showed Rich Duggan the edges of the vinyl floor covering where there were pebbles and bumps. The parties also noticed some cracks in the flooring.
 {¶ 6} Rich Duggan stated that he would remove the flooring, the cabinets and the doors. He told Bodenberg that the skim coating would be removed and that they would replace the skim coating and re-lay the flooring. The process would take about three weeks to complete. At that time, Rich Duggan mentioned that if Bodenberg wished, he would lay ceramic tile instead of vinyl flooring.
 {¶ 7} At this point, communication between the parties began to unravel. Bodenberg waited for Duggan Homes to schedule the repair work needed for the home, while Duggan Homes waited for Bodenberg to identify whether she wanted ceramic or vinyl flooring installed.
 {¶ 8} Bodenberg's attorney contacted Duggan Homes on May 8, 2001, but received no response. Bodenberg's attorney called again the next day, and a representative from Duggan Homes returned the call. Bodenberg's attorney indicated that Duggan Homes should make the repairs to the defective floor. Duggan Homes' representative asserted that the defects were "cosmetic." Upon his request, the attorney received a copy of the Home Builders Association's industry standards from Duggan Homes. At no point did anyone from Duggan Homes make repairs to the floor or contact Bodenberg or her counsel to schedule a time in which to make such repairs.
 {¶ 9} Bodenberg filed a complaint against Duggan Homes in July of 2001. Duggan Homes filed a motion to dismiss on August 9, 2001, alleging that the parties contracted to arbitration to resolve their dispute. The trial court determined that a portion of Bodenberg's causes of action were governed by the arbitration provision and stayed the case pending arbitration. Eventually Bodenberg dismissed her causes of action which were subject to arbitration in order to proceed on the remaining causes of action. Accordingly, the two claims before the trial court that remained were the breach of warranty issue and the violation of the Act.
 {¶ 10} A bench trial before a magistrate was held on January 15 and 16, 2003. At the close of the trial, the magistrate noted the following:
 {¶ 11} "As of the time of the closing, September 6, 2000, there was a defect in materials and workmanship in Plaintiff's kitchen floor. The concrete slab was not level. The skim coating, Defendant's subcontractors had used in an attempt to make the slab in the floor level, did not adhere or bond properly. As a result, the skim coating layers began to delaminate and break up. This process caused the kitchen floor to be uneven and for the crack and bumps to appear. Eventually that caused the vinyl flooring to lift, bubble, and peel. There was a crack in the floor near the area where there was waves or unevenness." (Doc. No. 49, p. 5.)
 {¶ 12} The magistrate found that Bodenberg had alerted Duggan Homes to the flooring issues within the required amount of time, and that Duggan Homes failed to comply with the industry performance standards as promulgated by the Home Builders' Association and as covered by the homeowner's warranty. Thus, Duggan Homes breached the warranty when it failed to correct the problems. Further, the magistrate found that Duggan Homes' pattern of failing to respond to Bodenberg's and her father's contacts regarding the flooring constituted a pattern of "one who is attempting to stall and evade a legal obligation to the consumer." (Doc. No. 49, p. 9.) Additional evidence of this stalling and evading was found in Duggan Homes' failure to take action and repair the issues, leading to intervention by Bodenberg's attorney.
 {¶ 13} The magistrate awarded judgment in favor of Bodenberg and against Duggan Homes in the amount of $19,393.25, which included the cost of the repairs plus living expenses for Bodenberg to live outside her residence while the repairs were completed. The magistrate denied Bodenberg's request for treble damages pursuant to R.C. 1345.09(B), a provision under the Act granting the consumer treble damages for deceptive or unconscionable practices.
 {¶ 14} Duggan Homes and Bodenberg objected to the magistrate's decision. The trial court agreed that the problems with the flooring constituted a breach of warranty on behalf of Duggan Homes. The trial court affirmed the magistrate's decision that Duggan Homes' actions and inactions constituted a violation of the Act based upon its attempt to stall and evade a legal obligation. Additionally, the trial court agreed with the magistrate that the case did not call for Duggan Homes to be assessed treble damages under R.C. 1345.09(B), as Bodenberg did not meet the two-part test. Specifically, the trial court found that Bodenberg failed to prove that Duggan Homes' conduct was "unconscionable" as defined under the statute, and that Bodenberg failed to offer any evidence that similar violations occurred in cases available for viewing in the Attorney General's public inspection file as specified under R.C. 1345.05(A)(3).
 {¶ 15} Bodenberg now appeals the trial court's decision, asserting four assignments of error.
 {¶ 16} Bodenberg's first assignment of error is as follows:
 {¶ 17} "If a case finding that the misconduct at issue violates the Act is available for public inspection before the misconduct is committed, then a consumer is entitled to treble damages."
 {¶ 18} In her first assignment of error, Bodenberg asserts that the issue of treble damages under the Act is governed by the plain language of R.C. 1345.09(B), which states that if the actions at issue which violate the Act are in the Attorney General's Public Inspection File ("PIF") before the actions are committed, then the consumer is entitled to treble damages. Bodenberg argues that in interpreting the plain language of the statute at issue, as long as decisions finding that the acts at issue violate the Act and are contained in the PIF before the acts are committed, then the treble damages issue is settled without further evidence of the specific decision being contained in the PIF.
 {¶ 19} We disagree. R.C. 1345.09(B) states, in pertinent part:
 {¶ 20} "Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02 or1345.03 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of his actual damages or two hundred dollars, whichever is greater, or recover damages or other appropriate relief in a class action under Civil Rule 23, as amended."
 {¶ 21} Regarding the second option, R.C. 1345.05(A)(3) in turn provides that the attorney general shall "[m]ake available for public inspection * * * all judgments, including supporting opinions, by courts of this state * * * that * * * violate [R.C.] 1345.02 or 1345.03[.]" Several Ohio courts have found that the language contained in this section makes it an element to prove treble damages, that evidence must be established and provided to the trial court that such decision of the violation of the act is contained in the PIF. See, White v. Hornbeck, Wayne App. No. 01CA0057, 2002-Ohio-3037; Fribourg v. Vandermark (July 26, 1999), Clermont App. No. CA99-02-017.
 {¶ 22} In Fribourg, the sole issue was that appellees failed to provide the trial court with evidence that Brown v.Lyons (C.P. 1974), 43 Ohio Misc. 14 was made part of the PIF as required under R.C. 1345.05(A)(3). The appellate court sustained the assignment of error, stating that "appellees never presented any evidence that this particular decision was ever made part of the public inspection file or the attorney general's office as clearly required under R.C. 1345.09(B) or 1345.05(A)(3)." Id.
 {¶ 23} Similarly, in White, supra, the appellate court based its decision on the Fribourg court's decision and found that appellants were not entitled to treble damages based upon their mere statements that such decisions were contained in the PIF. The court found that the appellants had "failed to provide the trial court with any evidence that the decisions they referred to in their request for treble damages were ever part of the public inspection file of the Attorney General's office as required by R.C. 1345.05(A)(3). * * * [W]e note that the Whites merely stated in their motion that the decisions that they referred to were on file in the Attorney General's office. They, however, never presented any evidence that the decisions were in fact made part of the public inspection file of the Attorney General's office." Id. at ¶ 10.
 {¶ 24} Accordingly, we disagree with Bodenberg's characterization that their burden of proof was fulfilled simply by the existence of the decision in the Attorney General's PIF. We agree with the trial court and the magistrate that Bodenberg failed to produce evidence at the time of the trial that such decisions were contained in the PIF.
 {¶ 25} We thus find no merit in Bodenberg's first assignment of error.
 {¶ 26} Bodenberg's remaining assignments of error:
 {¶ 27} "Bodenberg is entitled to treble damages, because cases finding Duggan's misconduct violative of the Act were available for public inspection before the misconduct occurred."
 {¶ 28} "The trial court may not place requirements on Bodenberg that are not contained in the Act."
 {¶ 29} "Even if something beyond the statutory language was required, the circumstances of this case comply with any unstated requirement."
 {¶ 30} Our disposition of the first assignment of error renders the remaining assignments of error moot.
 {¶ 31} Accordingly, we affirm the trial court's decision.
Brogan, J. and Wolff, J., concur.